15 xo

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7439 | **DATE** | 7/18/2002 |
| **CASE TITLE** | LORRY J. STENSRUD vs. METLIFE INVESTORS INS. CO., ET AL. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for summary judgment [14-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 19 2002 | 22 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | MK docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/18/2002 | |
| | | | date mailed notice | |
| CB | courtroom deputy's initials | 02 JUL 18 PM 5:10 | pw mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORRY J. STENSRUD, )
)
Plaintiff, ) No. 01 C 7439
)
v. ) Suzanne B. Conlon, Judge
)
METLIFE INVESTORS INSURANCE )
COMPANY and METROPLITAN LIFE )
INSURANCE COMPANY, )
)
Defendants. )

**DOCKETED**
**JUL 1 9 2002**

## MEMORANDUM OPINION AND ORDER

Lorry J. Stensrud ("Stensrud") initially filed this action against MetLife Investors Insurance Company ("MetLife Investors") and Metropolitan Life Insurance Company ("MetLife")(collectively, "defendants") in the Circuit Court of Cook County, claiming he was wrongfully denied his rights under defendants' incentive compensation plans. Specifically, Stensrud brought claims for constructive discharge (Count I), breach of contract (Count II), promissory estoppel (Count III) and declaratory judgment (Count IV). Defendants removed the action to this court based on diversity jurisdiction. MetLife Investors then counterclaimed for conversion and breach of fiduciary duty. On May 24, 2002, Stensrud agreed to dismiss Counts II, III and IV and MetLife Investors agreed to dismiss the counterclaims. Defendants now move for summary judgment on Count I pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

The following facts are undisputed unless otherwise noted. Stensrud worked in Illinois as the president of Cova Financial Services Life Insurance Company and Cova Life Management

1

Company (collectively, "Cova"). Cova's stock was owned by Cova Corporation, a subsidiary of GenAmerica ("GenAm") Corporation. As president of Cova, Stensrud was responsible for the daily direction and long-term development and profitability of the company. In this role, Stensrud indirectly supervised 220 to 300 people.

In 1996, Stensrud entered into a long-term incentive plan agreement with Cova Corporation. In 1999, Cova Corporation and Stensrud agreed to replace Stensrud's long-term incentive plan agreement with a stock option plan agreement. According to the stock option plan agreement, Stensrud's stock options would vest immediately if certain events occurred, including his termination without cause. The stock option plan agreement also contained a Missouri choice of law provision.

During the summer of 1999, GenAm experienced financial difficulties which ultimately resulted in receivership. As a result, Cova's credit rating dropped to "non-investment grade." Cova's distributors, including A.G. Edwards ("Edwards") and Edward Jones ("Jones"), suspended sales of Cova products. In August 1999, MetLife signed an agreement to acquire GenAm. The deal closed on January 6, 2000. Cova Corporation was subsequently renamed MetLife Investors.

After the sale, Stensrud remained Cova's president. In his role as president, Stensrud focused on preserving Cova's relationship with Edwards and Jones and retaining its employees. According to Stensrud, this "was a full-time job" "critical to the survival of MetLife Investors and its distribution systems during the transition period." Pl. Response to Def. Facts at ¶¶10-11. In February 2000, Stensrud's base salary was increased to $520,000. In March 2000, Stensrud began discussing employment opportunities with other insurance companies, including Mass Mutual, Allstate, Northwestern Mutual and Lincoln National.

2

On April 10, 2000, MetLife hired Jamie Shepherdson and Greg Brakovich to run a new division. Cova was assigned to the new division. On April 25, 2000, Stensrud met with Shepherdson and Brakovich. According to Stensrud, Shepherdson and Brakovich told him they were taking over his responsibilities for marketing, sales, product development and administration. Response at 6.

During this time period, Stensrud began interviewing with Lincoln National. On May 19, 2000, Lincoln National offered Stensrud a position as chief executive officer of Lincoln Annuities. The offer included a compensation package worth approximately $1.5 million per year. On June 2, 2000, Stensrud accepted the offer and resigned his position with Cova. At that time, Shepherdson and Brakovich had not yet determined how to organize the new division. Stensrud had not yet been told what specific role he would have after the transition period.

## DISCUSSION

### I. Jurisdiction

The parties agree jurisdiction is proper under 28 U.S.C. § 1332. Nevertheless, the court has an independent duty to determine whether subject matter jurisdiction exists before deciding the merits of a case. *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 279, 281 (7th Cir. 2001). According to defendants' notice of removal, Stensrud is an Illinois citizen. On the other side, MetLife is a New York corporation with its principal place of business in New York and MetLife Investors is a Missouri corporation with its principal place of business in California. Complete diversity of the parties exists.

In addition, the amount in controversy exceeds $75,000. If the amount in controversy is uncontested, the court must accept the parties' representation unless it "appears to a legal certainty

3

that the claim is really for less than the jurisdictional amount." *Target Market Publishing, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1141-42 (7th Cir. 1998), *quoting St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). In his complaint, Stensrud seeks damages of $1.9 million. Under the stock option plan agreement, Stensrud was granted the option to purchase up to 6,005 shares of Cova Class B common stock at a price ranging from $1,061.21 to $1,192.69 per share upon vesting. Therefore, it does not appear to a legal certainty that Stensrud's claim is for less than $75,000.

## II.  Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Choice of Law

Stensrud worked in Illinois, but the stock option plan contains a Missouri choice of law provision. In a diversity case, the court must apply the forum state's choice of law rules to determine the applicable substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). However, "before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992). Under Illinois and Missouri law, a constructive discharge occurs when an employee's working conditions are made so intolerable, a reasonable person would feel compelled to resign. *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 315 6 700 N.E.2d 1105, 1112 (4th Dist. 1998); *Pollock v. Wetterau Food Distribution Group*, 11 S.W.3d 754, 764 (Mo. App. E.D. 1999). Both the Illinois and Missouri courts rely on federal caselaw in evaluating constructive discharge claims. *See Motley v. Illinois Human Rights Commission*, 263 Ill. App. 3d 367, 373, 636 N.E.2d 100, 104 (4th Dist. 1994); *Pollock*, 11 S.W.3d at 764-65. Absent a true conflict between the substantive law of Illinois and Missouri, the court need not determine which law applies.

## IV. Constructive Discharge

Stensrud argues the reduction in his job duties after Shepherdson and Brakovich were hired in April 2000 rendered his working conditions so intolerable, he was compelled to resign. In order to prove his claim for constructive discharge, Stensrud must establish working conditions that are "even more egregious than the high standard for hostile work environment because 'in the 'ordinary' case, an employee is expected to remain employed while seeking redress.'" *Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000), *quoting Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d

5

878, 886 (7th Cir. 1998); *See also Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996)("To act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly). Stensrud fails to meet this burden.

Stensrud fails to offer evidence that the transfer of some of his job duties to Shepherdson and Brakovich created an intolerable work environment. Unlike the plaintiffs in the cases cited by Stensrud, Stensrud does not claim he was relegated to performing insignificant tasks unrelated to his experience and abilities. *See Trapkus v. Edstrom's, Inc.*, 140 Ill. App. 3d 720, 721, 489 N.E.2d 340, 342 (3rd Dist. 1986)(plaintiff "relieved of all managerial responsibilities and ordered to begin menial tasks"); *Bernstein v. Consolidated Foods*, 622 F. Supp. 1096, 1102-1103 (N.D. Ill. 1984)(one plaintiff assigned to position which required only one hour per day to perform while the other plaintiff was not given the information necessary to perform his new job); *Golden v. Pioneer Life Ins. Co. of Illinois*, No. 90 C 20338, 1992 WL 229788, at *5 (N.D. Ill. Sept. 9, 1992)(plaintiff stripped of supervisory responsibilities when she was reassigned to newly created position without a budget, staff or office); *Lincoln v. Board of Regents*, 697 F.2d 928, 935 (11th Cir. 1983)(professor assigned to perform "insignificant tasks that had no relation to her training or experience"); *Hopkins v. City of Jonesboro*, Arkansas, 578 F. Supp. 137, 141 (E.D. Ark. 1983)(police officer permanently assigned to inferior radio operator position).[1] To the contrary, Stensrud admitted his efforts to preserve defendants' distribution systems and employee base during the transition period "was a full-time job" "critical to the survival of MetLife Investors." Stensrud's performance of duties

---

1     Stensrud also claims the plaintiff in *Goss v. Exxon Office Systems Co.*, No. 82-3156, 1983 WL 612 (E.D. Pa. July 1, 1983) was "constructively discharged when she was transferred to a less desirable sales territory following a medical leave." Response at 10. However, the *Goss* court also based its decision on aggravating conduct not present here. *Goss*, 1983 WL 612, at *7-8 (Plaintiff miscarried after her manager, knowing she was pregnant and suffered a miscarriage in the past, verbally abused her for an hour, challenging her ability to be a fit mother and a successful sales representative at the same time).

6

commensurate with his experience and abilities on a full-time basis until his resignation forecloses his constructive discharge claim.

The Seventh Circuit recently affirmed summary judgment on a constructive discharge claim under similar circumstances. *Ulichny v. Merton Community School*, 249 F.3d 686 (7th Cir. 2001). In *Ulichny*, the plaintiff, who retained her title and salary, quit after her supervisor stripped her of some job duties. *Id.* at 703. The court specifically found "the fact that [the plaintiff] endured the changes for a short span of only three weeks truly undermines her constructive discharge claim." *Id.* Similarly, Stensrud, who retained his title and salary, continued to perform some, but not all, of his job duties after Shepherdson and Brakovich were hired. Like the plaintiff in *Ulichny*, Stensrud did not attempt to endure the change in responsibilities. Indeed, Stensrud actively began his job search before Shepherdson and Brakovich were even hired. Stensrud then tendered his resignation approximately five weeks after meeting with Shepherdson and Brakovich without knowing what his future role with the company would be after the transition period. *See Brown v. Ameritech Corp.*, 128 F.3d 605, 608 (7th Cir. 1997)(plaintiff, who knew undesirable reassignment was temporary and had "no reason . . . to think that he would spend the rest of his life" on it, was not constructively discharged). Based on this record, a reasonable jury could not find Stensrud was constructively discharged.

## CONCLUSION

MetLife and MetLife Investors are entitled to judgment as a matter of law on Stensrud's constructive discharge claim.

July 18, 2002

ENTER:

Suzanne B. Conlon
United States District Judge

8